UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**DAVID HERBERT HUNT**,

Debtor.

Case No. **16-61163-11**

# MEMORANDUM OF DECISION

The Debtor in Possession, David Hunt ("Debtor"), employed John S. Knowlton and The Burton Law Firm (collectively "Counsel") as special counsel under § 327(e).[1] *See* Doc. No. 78 (employment application). The employment application indicated Counsel was being retained to provide post-bankruptcy services "in LJE Investment litigation in Mariposa County Superior Court" and to "assist [Debtor] with mediation." The order granting the employment application specifically stated that Counsel's compensation would be evaluated under § 330 standards. Doc. No. 79. It stated, in part, "all fees paid to said professional are subject to approval of this Court upon the filing of a proper application for reasonable professional fees and reimbursement for actual, necessary expenses *in accordance with Mont. LBR 2016-1. The reasonableness of any fee request will be determined pursuant to the standards specified in 11 U.S.C. § 330*."). *Id.* (emphasis added).

On August 16, 2017, Counsel filed an Interim Application for Professional Fees

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532.

and Costs. Doc. No. 168 ("Application"). In the Application, Counsel seeks allowance of fees in the amount of $18,317.50 and costs in the amount of $1,806.63. The Application drew an objection from creditors Rosemary White, *et al.* (the "White Creditors"), challenging several of the itemized requests on various grounds. Doc. No. 177 ("Objection"). The Objection proposes that $9,280.00 of the fees, and all of the costs, be disallowed. *Id.* at 9. Counsel responded to the Objection. Doc. No. 185 ("Response"). The matter was heard by the Court on September 29, 2017, and taken under advisement. This Decision constitutes the Court's findings and conclusions on the contested matter pursuant to Rules 9014 and 7052.

    A.    **Compensation is governed by § 330 not § 328**

Initially, the Court observes that § 330 standards control the analysis and resolution of the matter.[2] Counsel has made statements suggesting that the order approving employment in some sense "pre-approved" the fees and costs, or the basis on which fees and costs would be allowed. *See, e.g.*, Application at 2, n.* (addressing overhead charge); Response at 2, (using "pre-approved" characterization), and at 6 (contending Creditors' raise "previously waived objections"). Counsel states that "had the court earlier ruled that his hourly fees would be reduced, that his number of hours (particularly travel at 50%) would have been cut, or that the fees he advanced would not

---

[2] While this is an interim application and § 331 allows interim compensation for professionals, § 330 provides the substantive standard for evaluating the requested professional compensation. *See* § 331 (referencing § 330); *see also In re Las Vegas Monorail Co.*, 458 B.R. 553, 557 n.5 (Bankr. D. Nev. 2011) (noting that interim applications are judged by the same standards as final applications under § 330).

be paid despite a court order, [he] would have declined this assignment[.]" *Id.* at 6. The Objection is also viewed by Counsel as a "collateral attack" by the White Creditors on the order approving employment. *Id.* at 9.

The Ninth Circuit distinguishes between employment authorized on specific preapproved terms with compensation governed by § 328 and employment authorized with compensation to be evaluated under § 330. The former limits the ability to alter the agreed upon terms or conditions only if the same "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *The Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re The Circle K Corp.)*, 279 F.3d 669, 671 (9th Cir. 2002) (quoting § 328(a)). "In the absence of preapproval under § 328, fees are reviewed at the conclusion of the bankruptcy proceeding under a reasonableness standard pursuant to 11 U.S.C. § 330(a)(1)." *Id.* The Circuit cautioned: "We hold that unless a professional's retention application unambiguously specifies that it seeks approval under § 328, it is subject to review under § 330. As a matter of good practice, the bankruptcy court's retention order should likewise specifically confirm that the retention has been approved pursuant to § 328 so as to avoid any ambiguity." *Id. See also In re First Magnus Fin. Corp.*, 2009 WL 7809001, *8–9 (9th Cir. BAP Feb. 24, 2009) (holding *Circle K* establishes a "bright-line rule").

The employment application did not, in *Circle K*'s words, "invoke § 328."[3]

---

[3] The employment application cites only § 327(e). It indicated that the terms of employment agreed to by Debtor and Counsel were "subject to approval of the Court[.]" Those terms were ensconced

Additionally, the order approving Counsel's employment did not unambiguously provide that § 328 applied; rather, it expressly indicated fees and costs would be reviewed under § 330 and Mont. LBR 2016-1. "In this Circuit, unless a professional is *unambiguously* employed pursuant to § 328, its professional fees will be reviewed for reasonableness under § 330." *Circle K*, 274 F.3d at 674 (emphasis added).

Counsel also noted the White Creditors had raised an objection to its employment. *See* Doc. No. 82. That objection to employment questioned the need for any additional counsel and Counsel's proffered hourly rate. *Id.* The White Creditors withdrew that objection, though the document doing so does not state why. Doc. No. 85. However, even if the withdrawal were a basis to argue the White Creditors might be estopped in some fashion from raising these two (or other) objections to the Application, this would not and does not inhibit the Court's ability, nor its responsibility, to evaluate the Application under § 330 and the Local Rule.

**B.     Fees**

   **1.     Rates**

The Objection does not facially contest Counsel's $325/hour rate. Whether this is due to the White Creditors having withdrawn their opposition to employment is not clear,

---

in a Fee Engagement Letter attached to the application. Doc. No. 78 at 2. The engagement letter is problematic in certain regards, such as its suggestion that any disputes would be subject to arbitration. The engagement letter appears to be a state–styled engagement letter, not one crafted for the existence of and employment within a bankruptcy proceeding. The application also contained an "employment contract and general retainer agreement" under which Debtor agreed to pay Counsel, but it noted—importantly—that "all fees and costs [are] subject to the final approval of the Bankruptcy Court[.]" *Id.* at 13.

4

but also not material.  The Court finds the rate to be reasonable.  *See* § 330(a)(3)(B), (F).

The suggested rate for Sherri L. Handley is $175/hour.  Who Ms. Handley is and the position she holds is not made clear in the Application.  However, the employment application indicates $175/hour is a standard rate in Counsel's firm for a "Senior Paralegal."  Doc. No. 78 at 8.  The Application does not adequately support this suggested rate.  However, there are other objections to the services performed by Ms. Handley, and the Court concludes it need not resolve the issue of the reasonableness of such a rate for a paraprofessional.

> 2. **Services**
>> a. **Ms. Handley**

The White Creditors object to the services performed by Ms. Handley on January 26, 27, 30, 31 and February 2, 6, and 7 totaling $700.00, contending the descriptions of the services establish they dealt with Counsel's filing claims in the bankruptcy case and not services related to Counsel's limited engagement as special counsel.  Counsel withdrew these charges in the Response.  Doc. No. 185 at 7.  The Objection did not mention a single additional entry by Ms. Handley on January 25 for $35.00.  The description suggests that it, too, was similar in nature and it will also be disallowed.

>> b. **Mr. Knowlton**
>>> i. **"Outside the engagement"**

The Objection assails many time entries as being outside the limited scope of Counsel's engagement as § 327(e) special counsel.  Many of these relate to services

5

performed in dealing with Debtor's attorneys and getting Counsel's employment approved by the Court. Despite the White Creditors' insistence that these were for Counsel's personal benefit, a professional must be properly employed under § 327, which necessarily entails some work by that professional as well as by Debtor's counsel in order to comply with the Code and the Rules. So long as those efforts were reasonable in nature and time, they are properly compensable. The challenged services, *see* Objection at 3–4, total $422.50 by the White Creditors' calculation.[4] The Court has reviewed the entries and finds these challenged services to be allowable under § 330(a)(3) and this objection will be overruled.

The Objection also targets, as being outside Counsel's engagement, services on February 17, 21 and 24. *Id.* at 4–5. The employment's scope under the initial application "may include specified services for any appeal" of an underlying judgment. The challenged services, which total $487.50, are adequately justified in Counsel's Response as relating to that matter. This objection will be overruled.

The Objection also challenges services on February 15 and April 5 totaling $227.50 as being outside the scope of the engagement. Counsel explained that these services related to his preparation to assist in mediation, and that explanation is adequate. This objection will be overruled.

---

[4] The Objection challenges a February 21 charge for $65.00. The Application has two entries on that date, one for "no charge" and another for $130.00; there is no $65.00 charge. Moreover, the Objection's description of the February 21 entry is inconsistent with either February 21 entry. And a March 25 entry is challenged but there is no such entry on that date. It seems to be a reference to a March 14 charge, which is separately objected to, thus making this a duplication.

### ii. Duplication

The White Creditors object to 1.2 hours of services on February 28, April 10, and April 11 totaling $715.00 as duplicative of the services performed by Debtor's bankruptcy counsel. It is not clear that these services duplicated any performed by Debtor's attorney or that Counsel assumed duties that were properly those of Debtor's attorney. And Counsel's Response that these, too, were related to Mr. Knowlton's effective preparation for mediation is found sufficient. This objection will be overruled.

### iii. Lumping

Montana Local Bankruptcy Rule 2016-1(a) provides in pertinent part:

> Professional fees shall be documented through contemporaneous billing records. Each task shall be itemized separately, identifying the task performed, the amount of time involved, and the fee for each time entry. The Court may deny compensation for tasks which are lumped together in one entry if the cumulative time for those tasks exceeds one hour. Lumping shall be permitted for cumulative tasks which do not exceed one hour.

In applying this rule, *Hunt v. Bailey (In re Bailey)*, 2013 WL 5651742 (Bankr. D. Mont. Oct. 16, 2013), held that "where lumped tasks exceed one hour [in violation of Mont. LBR 2016-1(a)] the Court will allow one hour and disallow the rest." *Id.* at *2.

The Objection argues that entries on February 27 for $162.50 (.50 hours); on February 28 for $325.00 (1.0 hour); on March 3 for $97.50 (.30 hour); on March 3 for $162.50 (.50 hour) and on March 31 for $130.00 (.40 hour) have lumped descriptions and should be disallowed. However, each of these entries falls within the provision of the Local Rule; even if lumped, they are allowable since they are each less than one hour. The Objection as to these entries on the basis of alleged lumping is facially flawed given

7

the provisions of the Local Rule and will be overruled.

The Objection also challenges an entry on April 14 for $975.00 (3.0 hour) as impermissibly lumped. This entry concerns services related to meetings with Mr. Hunt and, apparently, an accountant. It also includes review of documents and issues. These all appear, in the context of the surrounding entries, to be involved in Mr. Knowlton's preparation for mediation. However, Counsel did not separately identify the time spent in the two meetings and the time spent in other preparation for mediation. As these services were lumped in contravention of the Local Rule, the Court will follow *Bailey* and allow one hour ($325.00) and disallow the remainder. Therefore, the objection will be sustained in part and $650.00 will be disallowed.

### iv. Travel

The White Creditors object to Mr. Knowlton charging his full hourly rate for travel from Sacramento, California to Missoula, Montana. There are several issues with this contention.

The Objection prefaces this argument by arguing that Counsel's travel to Montana for mediation duplicated the work of other counsel for Debtor and should not be compensated at all. Alternatively, the White Creditors argue that Counsel could have participated in the mediation by telephone. These arguments ignore the disclosure in the original employment application that part of Counsel's anticipated services would be assisting in the mediation. Additionally, the contention that assistance could be provided by telephone is not borne out by this record. Mr. Knowlton traveled to Montana on April

13.  He held meetings and prepared on April 14.  The entry on April 17 indicates he went to and attended the mediation starting at 8:30 a.m. and returned to his hotel at 7:00 p.m., and he returned to California on April 18.  That telephone participation was a viable alternative is not suggested by the length of services on April 17, nor is it consistent with the Court's experience with the time involved in, and the dynamics of, mediation.  These objections will be overruled.

The Objection alternatively argues that Counsel's travel time (on April 13 and April 18) should be allowed at only one-half the standard hourly rate.  The White Creditors cite *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 530 (Bankr. D. Mont. 2000).  While that case so holds, the Court has been unable to find subsequent reported cases in Montana citing and applying that aspect of *Grosswiler Dairy*.  The Court has also not found (and the Objection does not cite to) other Montana case law on point.  But, more importantly, Mont. LBR 2016.1(a), as adopted in 2001 and continued unchanged in revisions effective December 1, 2009, expressly provides:

> Professionals shall be allowed compensation at the professional's usual hourly rate for reasonable and necessary travel time.

Given the clarity of the Local Bankruptcy Rule, the citation to *Grosswiler Dairy* is patently improper.  This objection will be overruled.

### C.  Costs

"[R]eimbursement for actual, necessary expenses" is authorized by § 330(a)(1)(B).  In addition, Mont. LBR 2016-1(e) provides:

> (e) **Allowed Expenses.**  In addition to a professional's fees and compensation,

9

>the following expenses shall be allowed at the actual cost to the professional: postage, long-distance telephone, facsimile charges, computerized legal research, travel-related expenses, and other expenses associated with the professional's representation of the party, provided they are shown to be reasonable and necessary. Photocopy costs shall be presumed reasonable and shall be allowed at the rate of $.10 per page, unless the professional proves a greater actual cost; provided they are shown to be necessary. Mileage shall be presumed reasonable and shall be allowed at the federal rate provided by the regulations of the Internal Revenue Code for travel by private automobile, unless the professional proves a greater actual cost; provided such mileage is shown to be necessary.

The Application seeks $844.92 in itemized expenses for travel. The Objection challenges these on the same basis as it challenged Counsel's fees for traveling to Montana for the mediation, *i.e.*, that travel was not necessary or reasonable, and Counsel could have participated by phone. Those arguments have already been rejected in connection with allowance of fees, and they are rejected here as to the travel costs. Those costs are claimed and itemized as required by the Local Rule and will be allowed.

The Application also asserts an "overhead charge" of $961.71 which it explains is calculated at a rate of 5.25%. Doc. No. 168 at 8–9. The engagement letter appended to the underlying employment application explains that "For most costs, such as postage, long distance telephone charges, photocopying expenses, etc., [Counsel] charges a flat 5.25% overhead charge above standard hourly rates." Doc. No. 78 at 9. Mathematically, the $961.71 represents 5.25% of the total fees claimed in the Application.

Counsel defends this asserted overhead charge by relying on the proposition that it was "preapproved" in the § 327(e) employment process, including the White Creditors' withdrawal of objection to that employment. Such a contention has already been rejected

by the Court in regard to the Court's § 330 review of fees, it is similarly unavailing in regard to costs.

The Court reviews the allowance of costs and expenses under § 330(a)(1)(B) and Mont. LBR 2016-1(e). And, recall, both § 330 and Mont. LBR 2016-1 were expressly identified in the order approving employment as the standard by which compensation requests would be evaluated. The methodology used by Counsel to deal with postage, photocopies, long-distance telephone and like expenses fails to meet the requirements of the Local Rule. Therefore, the requested $961.71 will be disallowed.

**CONCLUSION**

Consistent with the foregoing, the fees requested by Counsel of $18,317.50 will be reduced by $1,385.00 (*i.e.*, the $700.00 withdrawn by Counsel, the $35.00 disallowed by the Court in regard to Ms. Handley, and the $650 disallowed due to lumping). Fees are allowed in the amount of $16,932.50. The requested costs of $1,806.63 will be reduced by $961.71. Costs and expenses are allowed in the amount of $844.92. An Order will be entered accordingly.

DATED: October 30, 2017

TERRY L. MYERS
U. S. BANKRUPTCY JUDGE